**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                                                    **4:23-mj-833**

**TYREE HEBERT**

**DEFENDANT'S OBJECTION TO DETENTION HEARING AND
REQUEST FOR RELEASE ON CONDITIONS**

Defendant Tyree Hebert, through his counsel, respectfully requests that this

Court order his release from custody pursuant to the Bail Reform Act (BRA) and the

Fifth Amendment's Due Process Clause. Supreme Court precedent makes it unlawful

and unconstitutional for a court to hold a Detention Hearing or detain a defendant

at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f). As all

six courts of appeals to directly address the question have recognized, the only

permissible bases for detaining a defendant at the Initial Appearance and proceeding

to a Detention Hearing are the enumerated factors set out in 18 U.S.C. § 3142(f).

Under § 3142(f), ordinary risk of flight is not a permissible basis for detention; rather,

the statute only authorizes detention if there is a "*serious risk* that [the defendant] will

flee." § 3142(f)(2)(A) (emphasis added).

Because Tyree Hebert is not charged with a § 3142(f)(1) offense, this is a "non-

(f)(1) case" where only a showing of one of the § 3142(f)(2) "serious risk" factors

1

would authorize holding a Detention Hearing.[1] In this case, the government has not presented sufficient evidence that Tyree Hebert poses a serious risk of flight.

The defendant hereby objects to the Court holding a detention hearing in this case because no such hearing is authorized under § 3142(f). Even if a detention hearing is authorized, Tyree Hebert's release on conditions is warranted. Accordingly, we respectfully request his release.

## PROCEDURAL BACKGROUND

A criminal complaint has been filed against Tyree Hebert for two counts involving extortion and stalking, in violation of 18 U.S.C. § 875(d) and 2261A(2). Tyree Hebert made his initial appearance on May 1st, 2023, at which time the government moved for a detention hearing. The Court scheduled a detention hearing for Wednesday May 3rd, 2023, and detained Tyree Hebert on a temporary detention order until that hearing.

## LAW AND ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act (BRA) provides those limited exceptions. Because the

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 91 (2022), https://freedomdenied.law.uchicago.edu/report.

government cannot meet its heavy burden of showing that no combination of release conditions would reasonably assure the safety of the community and Tyree Hebert's appearance as directed, the Court should grant his release.

### I.     The BRA Only Authorizes Detention at the Initial Appearance When One of the § 3142(f) Factors Is Met.

According to the plain language of § 3142(f), "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in § 3142(f)(1) and (f)(2). None of the § 3142(f) factors are present in this case.  Ordinary "risk of flight" is not among the § 3142(f) factors. The statute and the caselaw prohibit this Court from holding a Detention Hearing and do not authorize the Court to detain Tyree Hebert pending trial.

### a.     Supreme Court precedent and the plain language of the BRA prohibit this Court from detaining the defendant and holding a detention hearing without a § 3142(f) factor.

The Supreme Court's seminal opinion in *United States v. Salerno*, 481 U.S. 739 (1987), confirms that a Detention Hearing may only be held if one of the seven § 3142(f) factors is present. See *id.* at 747 ("Detention hearings [are] available if" and only if one of the seven § 3142(f) factors are present.). According to the Supreme Court, "[t]he Act operates only on individuals who have been arrested for a specific category of extremely

serious offenses. 18 U.S.C. § 3142(f)." *Id.* at 750 (emphasis added); see also id. at 747 ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes," specifically the crimes enumerated in § 3142(f) (emphasis added)). Salerno thus stands for the proposition that the factors listed in § 3142(f) serve as a gatekeeper, and only certain categories of defendants are eligible for detention in the first place. In fact, "a central reason the Supreme Court upheld the BRA as constitutional in Salerno was the gatekeeping function of the (f) factors." As the D.C. Circuit has held, "First, a [judge] must find one of six circumstances triggering a detention hearing…. [under] § 3142(f). Absent one of these circumstances, detention is not an option." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). "Every federal court of appeals that has examined this issue agrees that one of the § 3142(f) factors must be proven at the Initial Appearance in order to hold a Detention Hearing."

For a court to move forward from an Initial Appearance hearing to a Detention Hearing, "the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing' by presenting a valid (f) factor." If the government does not establish an applicable § 3142(f) factor by a preponderance of the evidence, several conclusions follow: (1) the government is prohibited from seeking detention, (2) there is no legal basis to detain the defendant at the Initial Appearance or pending a Detention Hearing, and (3) there is no legal basis for the court to hold a Detention Hearing.

Instead, the court is required to release the defendant on personal recognizance under § 3142(b) or on conditions under § 3142(c).

Detaining Tyree Hebert in this case without regard to the limitations in § 3142(f) raises serious constitutional concerns.  The strict limitations § 3142(f) places on pretrial detention are part of what led the Supreme Court to uphold the BRA as constitutional. It was the § 3142(f) limitations, among others, that led the Court to conclude that the Act was "regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Salerno*, 481 U.S. at 748.  Throughout its substantive Due Process ruling, the Salerno Court emphasized that the only defendants for whom the government can seek detention are those who are "already indicted or held to answer for a serious crime," meaning the "extremely serious offenses" listed in § 3142(f)(1). Id. (emphasis added); see also *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (discussing the BRA's legislative history).

### b.  The Courts of Appeals Agree that Detention Is Prohibited When No § 3142(f) Factor is Present.

Following the Supreme Court's guidance in Salerno, six courts of appeals agree that it is illegal to hold a Detention Hearing unless the government invokes one of the factors listed in 18 U.S.C. § 3142(f). See, e.g., *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th

Cir. 1992); *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).  For example, the First Circuit holds: "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *Ploof*, 851 F.2d at 11. The Fifth Circuit agrees. See *Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (2) is present," and "[d]etention can be ordered, therefore, only 'in a case that involves' one of the . . . circumstances listed in (f)." (quoting 18 U.S.C. § 3142(f)).

**II.     Supreme Court Precedent and the Plain Language of the BRA Prohibit this Court from Detaining a Defendant as an Ordinary "Risk of Flight."**

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "*serious* risk that [the defendant] will flee." There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance"). According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic

6

interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)).

**a. It was improper to detain Tyree Hebert because the Government has provided no evidence to support its claim that Tyree Hebert is a serious risk of flight.**

Where the government's only legitimate § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that the defendant poses a "serious risk" of flight, rather than the ordinary risk attendant in any criminal case. *See Friedman,* 837 F.2d at 49. Moreover, a defendant "may be detained *only if the record supports a finding* that he presents a serious risk of flight." *Himler*, 797 F.2d at 160 (emphasis added); *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *White*, 2021 WL 2155441, at *7 (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue"). After all, the statute authorizes detention only "*in a case that involves*" a "serious risk" that the person will flee. § 3142(f)(2)(A) (emphasis added). This contemplates a judicial

7

finding about whether the case in fact involves a *serious* risk of flight.[2] The government must provide an evidentiary basis to enable the judge to make an informed decision, typically evidence that relates either to the defendant's history and characteristics or to the circumstances of the offense. The government has presented no such evidence here.

**b. Detaining a defendant as a "serious risk of flight" is appropriate only in "extreme and unusual circumstances" involving a heightened risk of "intentional" flight.**

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[3] The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. Courts have articulated the elements of this extreme or unusual standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. *See*

---

[2] Had Congress intended to authorize Detention Hearings based on a mere certification by the government, Congress could have enacted such a regime, just as they have done in other contexts. *See, e.g.*, 18 U.S.C. § 5032 (creating exception to general rule regarding delinquency proceedings if "the Attorney General, after investigation, certifies to the appropriate district court of the United States" the existence of certain circumstances); 18 U.S.C. § 3731 (authorizing interlocutory appeals by the government "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding").

[3] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . . justifies pretrial detention*"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

*United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at \*4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.[4] *See White*, 2021 WL 2155441, at \*7 (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of non-appearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings"). Risk of flight is not the same as risk of nonappearance, *see White*, 2021 WL 2155441, at \*10, and a defendant should never be detained as a "serious risk" of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

### III.   In this case, the government has not met its burden of proving that Tyree Hebert poses a "serious" risk of flight under § 3142(f)(2)(a).

---

[4] *See* Lauryn Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 725 (2017). This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), *id.* at 735, or a "low-cost non-appearance" (who unintentionally fails to appear), *id.* at 729, can be addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services.

Tyree Hebert must be released immediately on conditions because the government did not argue that he posed a *serious* risk of flight and did not present any evidence whatsoever to establish that "there is a serious risk that the Tyree Hebert will flee" the jurisdiction under § 3142(f)(2)(A). Although the defense bears no burden of proof, it is clear from Tyree Hebert's history and characteristics that he does not pose a serious risk of flight. Tyree Hebert is a young man who has lived in Houston his entire life. His family lives here and are willing to support him and serve as a third party custodian. While he has criminal history as a juvenile, that history shows that he has complied with all the dispositions of the courts and has never failed to appear or complete his requirements.

As in *United States v. Morgan*, 2014 WL 3375028 (C.D. Ill. July 9, 2014), "the facts fail to establish any risk of flight," let alone a risk serious enough to authorize a Detention Hearing. *Id.* at *5 ("[T]he defendant has lived at his current address for over seven years and has lived in the same community for his entire life. His mother and siblings also all live relatively close to his residence, as do his children and their mothers. . . . Additionally, nothing in his criminal history suggests that he ever failed to appear for a court hearing."); *see also Friedman*, 837 F.2d at 49–50 (reversing a detention order for "serious risk of flight" where defendant was a lifelong resident of the district, was married with children, had no prior record, had been steadily employed before his arrest, and had been on bond for related state charges without incident); *White*, 2021

10

WL 2155441, at *13–14 (concluding that the government failed to show "serious risk of flight" where the defendant lacked community ties in the district, was charged with evading arrest and previously failed to appear in court in a different case).

Because Tyree Hebert does not present a "serious risk" of flight, neither § 3142(f)(1) nor § 3142(f)(2) is satisfied, a Detention Hearing is not authorized, and he cannot be detained under the law.

## IV.    Many conditions of release have been proven to effectively manage ordinary risk of flight or nonappearance.

Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating to 3,700 fewer arrest warrants per year.[5] Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems.[6] Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing,

---

[5] *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW.

[6] *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

employment or education.[7] Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight, although it is also particularly constricting of liberty, and consequently may only be imposed under the BRA if it is the *least* restrictive condition necessary to "reasonably assure" appearance and community safety.[8]

## V.      Tyree Hebert Requests Immediate Release with Conditions.

Because there is no basis to detain Tyree Hebert, he should be released immediately under the following conditions:

1. $50,000 unsecured bond.

2. Third party custodian

3. Pretrial Services supervision

4. Maintain or actively seek full-time employment, or register in a GED program.

5. Do not obtain a passport.

---

[7] *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2007), archived at https://perma.cc/5C8C-7HJK.

[8] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight").

6. Travel restricted to the State of Texas. Outside travel to be pre-approved by the U.S. Probation Office.

7. Avoid all contact with co-defendant, witnesses, victims or potential victims.

8. Refrain from possessing a firearm, destructive device, or other dangerous weapons. Firearms to be removed prior to release.

9. Refrain from excessive use of alcohol.

10. Refrain from use or unlawful possession of a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner. Do not use or consume products containing or marketed as cannabidiol (CBD).

11. Report contact with law enforcement within 72 hours.

These conditions will "reasonably assure" Tyree Hebert appearance and the safety of the community. § 3142(c). Tyree Hebert has lived his whole live in Houston, TX. He is a young man that has not completed high school and needs to complete his education and to acquire some vocational training that would help him throughout his life. The rest of conditions could assure the government that Tyree Hebert will be monitored and assure his appearance in court.

For these reasons, Tyree Hebert respectfully requests to be released with conditions this Court deems appropriate, under §§ 3142(a)–(c).

Respectfully submitted,


MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas No. 3233
Texas State Bar No. 14003750

By /s/ Tatiana Obando
Tatiana Obando
Assistant Federal Public Defender
Attorney-in-Charge
New York State Bar ID No. 5068671
Southern District of Texas No. 3326657
Attorneys for Defendant
440 Louisiana, Suite 1350
Houston, Texas   77002-1056
        Telephone:  713.718.4600
        Fax:            713.718.4610

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 2, 2023, a copy of the foregoing Defendant's objection to detention hearing and request for release on conditions was served by Notification of Electronic Filing and was delivered by email to the office of Assistant United States Attorney Sherri Zack.

/s/ *Tatiana Obando*
Tatiana Obando